```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
               Civil No. 09-3503(DSD/JSM)
```

Anytime Fitness, Inc., a
Minnesota corporation,

       Plaintiff,

v.                                                   **ORDER**

Family Fitness of Royal, LLC,
a California company, Anytime
Fitness-Tehachapi, a California
company, and Terry Delamater,
an individual,

       Defendants.

    James M. Susag, Esq., Sejal Desai Winkelman, Esq., Cynthia M. Klaus, Esq. and Larkin, Hoffman, Daly and Lindgren, 7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 5543, counsel for plaintiff.

    Joseph T. Dixon, Jr., Esq., Wesley T. Graham, Esq. and Henson & Efron, PA, 220 South Sixth Street, Suite 1800, Minneapolis, MN 55402 and William H. Leifer, Esq., Jennifer J. Panicker, Esq. and Gilmore, Wood, Vinnard & Magness, 7108 North Fresno Street, Suite 410, Fresno, CA 93720, counsel for defendants.

This matter came before the court on December 18, 2009, upon plaintiff Anytime Fitness, Inc.'s[1] ("Anytime Fitness") motion for a temporary restraining order ("TRO") against defendant Terry

---

[1] Anytime Fitness is a Minnesota corporation with its principal place of business in Hastings, Minnesota. Anytime Fitness changed its name to Anytime Fitness, LLC on December 11, 2009.

Delamater[2] ("Delamater").  Anytime Fitness and Delamater appeared through counsel.  Based upon a review of the file, record and proceedings herein, Anytime Fitness's motion for a TRO is denied, consistent with the court's December 23, 2009, oral order.

## BACKGROUND

Anytime Fitness owns and licenses over 1,200 24-hour fitness facilities.  Members join individual facilities and have reciprocal membership at all Anytime Fitness locations.  Delamater is an Anytime Fitness franchisee.  In December 2004, Delamater and Anytime Fitness executed an Area Development Agreement under which Delamater agreed to establish Anytime Fitness franchises in Kern County, California.  (Yiangou Decl. Ex. A.)  Pursuant to the Area Development Agreement, Delamater entered into four franchise agreements for facilities in Kern County: Oildale in December 2004, Tehachapi in October 2005, Westchester in December 2007 and an undeveloped location in April 2009.  (Pl.'s Mem. Supp. 6-7.)

Each 5-year franchise agreement contains a covenant not to compete, specifies governing law and venue and requires mediation before legal action.  The noncompete provision states that Delamater, "will not, directly or indirectly, during the term of this Agreement ... own, operate, lease, franchise, engage in, be

---

[2] Terry Delamater is a resident of Bakersfield, California. Delamater does business individually and as Family Fitness of Royal, LLC and Anytime Fitness-Tehachapi.  (Def.'s Mem. Opp. 2.)

connected with, have any interest in, or assist any person or entity engaged in any other fitness center ...."[3] (E.g., Yiangou Decl. Ex. C § 17.A.)  The Oildale franchise agreement has a California choice-of-law provision, and the other three franchise agreements have Minnesota choice-of-law provisions.  (See id. Ex. B § 19(e), Ex. C § 19(D), Ex. D § 19(D), Ex. E § 20(D).)  Venue is exclusively in the state and federal courts of Minnesota.  (See id. Ex. B § 19(F), Ex. C § 18(E), Ex. D § 18(E), Ex. E § 18(E).)  The Oildale franchise agreement expired on December 8, 2009.  The other three agreements remain in effect.

On October 19, 2009, Delamater demanded written confirmation from Anytime Fitness that it "cannot and will not attempt to enforce its non-competition clause" against Delamater.  (Id. Ex. F.).  Anytime Fitness refused.  On November 5, 2009, Delamater requested mediation.  (Leifer Dec. Ex. 5.)  Anytime Fitness accepted and selected two mediators.  (Id. Ex. 7.)  Delamater then declined to mediate and instead filed for declaratory and injunctive relief in the United States District Court for the Eastern District of California on November 18, 2009.  (Pl.'s Mem. Supp. 12-13; Graham Aff. Ex. A.).  On November 30, 2009, Delamater replaced the "Anytime Fitness" sign at Oildale with "Oildale

---

[3] Each agreement also has a covenant not to compete after expiration of the agreement.  Anytime Fitness does not rely on these post-term noncompete provisions for this motion. (See Pl.'s Mem. Supp. 8 n.4.)

Fitness." (Delamater Aff. ¶ 3, Dec. 22, 2009.) Later, Delamater transferred the Anytime Fitness memberships from Oildale to Westchester. Upon the expiration of the Oildale franchise agreement on December 8, 2009, Anytime Fitness filed this action, claiming breach of the noncompete provisions in the remaining three franchise agreements. It now seeks a TRO to enforce the terms of those agreements.[4]

## DISCUSSION

A TRO is an extraordinary remedy, and the movant bears the burden of establishing its propriety. See Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a TRO should issue: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. See Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

**I. Threat of Irreparable Harm**

"'The basis of injunctive relief in the federal courts has

---

[4] The case is proceeding to the merits in two courts: this court has heard argument on a motion to dismiss and the Eastern District of California has a motion for summary judgment scheduled for hearing on January 11, 2010.

always been irreparable harm and inadequacy of legal remedies.'" Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959)). Irreparable harm must be certain and imminent such that there is a clear and present need for equitable relief. Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). Possible or speculative harm is not sufficient. See Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1355 (8th Cir. 1995). Furthermore, the remedy at law must be inadequate. Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). Failure to show irreparable harm warrants denial of a TRO. See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

Anytime Fitness first argues that it is suffering irreparable harm due to unfair competition. According to Anytime Fitness, Delamater's other franchise agreements provide ongoing access to Anytime Fitness's proprietary information. Anytime Fitness argues that Delamater "will be able to take advantage of information regarding its upcoming promotions and sales strategies ... to draw customers to Oildale Fitness and usurp new customers." (Pl.'s Mem. Supp. 35.) The harm, however, is speculative rather than certain and imminent. Further, because Delamater owns the Anytime Fitness nearest to Oildale Fitness, if he uses the proprietary information,

5

he will primarily compete with his own business. Therefore, Anytime Fitness has not established irreparable harm through unfair competition.

Anytime Fitness next argues that it is suffering irreparable harm to its goodwill because Oildale Fitness confuses customers and provides access to Anytime Fitness. Delamater responds that he has installed new signs and remodeled the Oildale facility to distinguish it from Anytime Fitness. (Delamater Supplemental Aff. ¶¶ 2-8.) Further, he states that, following initial confusion, he "instructed the employees to inform customers that Oildale Fitness has no affiliation with Anytime Fitness and that Anytime Fitness memberships w[ill] not be honored at Oildale Fitness." (Delamater Aff. ¶ 17.) Anytime Fitness does not dispute these facts. Also, Delamater's transfer of Anytime Fitness memberships to Westchester clearly indicates separation between Anytime Fitness and Oildale Fitness. Therefore, Anytime Fitness has not established certain and imminent harm to its good will.

Lastly, Anytime Fitness argues that Delamater's actions will cause other franchisees to ignore their noncompete agreements and open independent fitness facilities, causing its franchise system to unravel. This concern is speculative, and the significant benefit of reciprocal membership at other Anytime Fitness facilities mitigates the incentive for franchisees to dissociate from Anytime Fitness. Further, success on the merits by Anytime

6

Fitness in this case or the case pending in the Eastern District of California would dissuade its franchisees from ignoring their agreements. Therefore, Anytime Fitness has not established irreparable harm. While this finding suffices to deny Anytime Fitness's motion for a TRO, the court nevertheless considers the remaining Dataphase factors.

**II. Balance of Harms**

Under the second Dataphase factor, the court analyzes whether the irreparable harm to the movant outweighs any potential harm to the nonmovants should the TRO issue. See Dataphase, 640 F.2d at 114. As stated above, Anytime Fitness has not established irreparable harm. Delamater asserts that closing Oildale Fitness as an independent fitness facility will cause harm to him. Delamater's harm is lessened, however, by his ability to operate his remaining Anytime Fitness facilities.[5] Accordingly, this factor weighs slightly in favor of Delamater.

**III. Likelihood of Success on the Merits**

The court next considers the "most significant" Dataphase factor: likelihood that the movant will prevail on the merits. S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). At this stage in the proceeding, the court does not decide whether

---

[5] Delamater's self-infliction of harm by refusing mediation and opening an independent fitness center despite his franchise agreements further lessens the weight assigned to the harm. See Anytime Fitness, Inc. v. Reserve Holdings, LLC, No. 08-4095, 2008 WL 5191853, at *7 (D. Minn. Oct. 8, 2008).

the movant will ultimately win, nor must the movant prove a greater than fifty-percent likelihood of success. See Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991); Dataphase, 640 F.2d at 113.

As an initial matter, the court must decide whether Minnesota or California law applies. Anytime Fitness asserts that the Minnesota choice-of-law provisions in the Tehachapi, Westchester and undeveloped franchise agreements control. Delamater responds that California law applies because the Westchester and undeveloped agreements each contain a "State Specific Addendum," which states, "The Franchise Agreement requires application of the laws and forum of Minnesota. This provision may not be enforceable under California law."[6] (E.g., Yiangou Decl. Ex. D.)

The court applies Minnesota choice-of-law rules under diversity jurisdiction. See Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1028 (8th Cir. 2003). Before undertaking a choice-of-law analysis, the court must determine whether there is an outcome-determinative conflict between the substantive laws in dispute. See Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 590 N.W.2d 670, 672 (Minn. 1999).

Minnesota courts uphold noncompete agreements that are "for the protection of the legitimate interest of the party in whose

---

[6] The Tehachapi agreement does not contain the same limitation. (See Yiangou Decl Ex. C.)

favor [they are] imposed, reasonable as between the parties, and not injurious to the public." See <u>Bennett v. Storz Broad. Co.</u>, 134 N.W.2d 892, 898 (Minn. 1965) (employment contract); <u>Adcom Express, Inc. v. EPK, Inc.</u>, No. C6-95-2128, 1996 WL 266412, at *4 (Minn. Ct. App. May 21, 1996) (franchise agreement). California courts uphold noncompete agreements during the term of a franchise agreement when the need of the franchisor "to protect and maintain its trademark, trade name and goodwill" outweighs the franchisee's right to operate its business. See <u>Comedy Club, Inc. v. Improv W. Assocs.</u>, 553 F.3d 1277, 1291–94 (9th Cir. 2009) (franchise agreement in limited area).

Both states' laws require the court to weigh the interests of Anytime Fitness and Delamater. Both states uphold noncompete agreements during the term of franchise agreements when the agreement is limited in scope. Therefore, there is no outcome-determinative difference in the law of Minnesota and California, and the court does not undertake choice-of-law analysis. See <u>State Farm Mut. Auto. Ins. Co. v. Great West Cas. Co.</u>, 623 N.W.2d 894, 899 (Minn. 2001). Accordingly, the court applies Minnesota law. See <u>Davis by Davis v. Outboard Marine Corp.</u> 415 N.W.2d 719, 723 (Minn. Ct. App. 1987) (applying forum law absent actual conflict of laws).

Anytime Fitness has legitimate interests in protecting itself and its franchisees from unfair competition. These interests

support restricting Delamater from operating an independent fitness facility in a limited area of Kern County.  As applied to the facts, where two Anytime Fitness facilities exist within six miles of his independent facility, the restriction is reasonable.  The public is not injured by such restriction: other fitness facilities exist in the area, as evidenced by Delamater's transfer of members from Oildale Fitness to a nearby Anytime Fitness, and the noncompete agreements do not prevent others from opening competing fitness facilities in the area.  Lastly, the parties do not challenge the validity of the franchise agreements.  Therefore, Anytime Fitness is likely to succeed on the merits.[7]

## IV. Public Interest

The public interest does not favor one party over the other. There is a strong public interest in upholding contractual agreements.  However, there also is a public interest in unrestrained competition.  Therefore, the public interest factor does not favor either party.

## CONCLUSION

Based upon a balancing of the four Dataphase factors, a TRO is

---

[7] The same outcome is likely were California law to apply. Restricting Delamater's ability to operate independent fitness facilities in a limited geographic area to protect Anytime Fitness outweighs Delamater's interest in operating a competing facility near the current Anytime Fitness facilities. See Dayton Time Lock Serv., Inc. v. Silent Watchman Corp., 124 Cal. Rptr. 678, 681-82 (Cal. Ct. App. 1975).

10

not warranted. Accordingly, **IT IS HEREBY ORDERED** that Anytime Fitness's motion for a TRO [Doc. No. 3] is denied.

Dated: January 8, 2010

                                          <u>s/David S. Doty</u>
                                          David S. Doty, Judge
                                          United States District Court